UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEN BLAIR,

    Plaintiff,

v.

THE BETHEL SCHOOL DISTRICT, *et al.*,

    Defendan**ts**.

Case No. C08-5181 FDB

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' motion for summary judgment seeking dismissal of Plaintiff's complaint alleging a violation of First Amendment rights to freedom of speech and/or to petition government for redress and/or to petition government. The Court, having considered the pleadings filed in support and in opposition, grants the motion for summary judgment and dismisses the complaint with prejudice.

**Introduction and Background**

Plaintiff, Ken Blair, is an elected board member of the Bethel School District. Plaintiff was first elected in 1999 and through the elective process retains that position to the present. Plaintiff is up for election again in 2009.

ORDER - 1

1  The Bethel School District School Board (School Board) is comprised of five elected directors voted upon by the citizens of the Bethel School District. The authority of individual board directors is limited to participating in actions taken by the board as a whole when legally in session. The internal organization of the School Board consists of the office of (1) President; (2) Vice-President; and (3) Legislative Representative. The office of President and Vice-President are elected by a vote of the directors to serve one-year terms. The majority of the School Board may elect a new President or Vice-President at any time. A majority of the School Board may change appointments to committees and representation to other bodies at any time.

The President of the School Board is the presiding officer at all board meetings and has the responsibility to manage the board's deliberations. The President is the signatory to all papers and documents as required by law or as authorized by action of the board and is the official recipient of correspondence directed to the board. The President has the authority to make decisions on behalf of the board when circumstances demand immediate action. These decisions are subject to review and ratification by the entire board. The President is the spokesperson of the board in dealing with the media and public in general and is authorized to report and discuss the actions which have been taken and those decisions made by the board as a body. The President has the duty to confer with the superintendent regarding sensitive issues that demand immediate attention and confer with the individual board members when appropriate.

The Vice-Principal is responsible for performing all the duties of the President in the case of the President's absence or disability.

Superintendent Tom Seigel was hired in approximately 2000. Over the next few years School Board Director Blair became dissatisfied with the Superintendent and in 2005 voted against the renewal of the superintendent's contract. In 2006, Plaintiff again voted not to renew Superintendent Seigel's contract.

In the period of 2006 and 2007, the School District was working on the purchase of property

ORDER - 2

for the development of a vocational skills center. Plaintiff again was dissatisfied with the performance of the Superintendent and also the actions of the majority of the School Board. On September 25, 2007 the School Board renewed Superintendent Blair's contract. Plaintiff Blair cast the sole dissenting vote.

On September 27, 2007 the Tacoma News Tribune published an article based on an interview conducted with Plaintiff Blair in which he discussed the School Board's vote to extend the Superintendent's contract and to authorize an increase in salary. Blair stated the basis for his dissenting vote and lack of confidence in the Superintendent.

In October 2007, following Plaintiff Blair's public criticisms of the superintendent and the School Board, the Board voted to replace Plaintiff Blair as Vice-President of the School Board. The Board replaced Plaintiff Blair with a Vice-President that the Board as a whole determined would reflect the views of the School Board. Plaintiff claims that the School Board engaged in a number of "petty" harassments thereafter.

Plaintiff claims that as a result of his removal from the Vice-Presidency, he was denied the opportunity to become the President through the typical election rotation and that he has suffered extreme anxiety and emotional distress.

Plaintiff asserts that as a direct and proximate result of his exercise of free speech rights by speaking to the news media, and his exercise of his right to a dissenting vote on the renewal of the Superintendent's contract, Plaintiff was subject to retaliation by the other members of the School Board in the form of removal of his title of Vice-President of the School Board.

**Summary Judgment Standards**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec.

ORDER - 3

Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U .S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id., at 324. Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Anderson, at 248. All reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., at 630.

Defendants seek summary judgment on all claims. Defendants assert that the Plaintiff's allegations of violations of his rights of freedom of speech and to petition government for redress under the federal constitution fail as a matter of law.

**Free Speech Claim**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that she was deprived of a federal right by a person or persons acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). There is no dispute that defendants are state actors. Therefore, the only issue presented is whether the acts Plaintiff Blair has alleged, if true, violate his First Amendment right of free speech.

To state a violation of the First Amendment through retaliatory action, a plaintiff must state: (1) that the plaintiff engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3rd Cir. 2003). "The inquiry into the protected status of speech is one of law, not fact." Connick v. Myers, 461 U.S. 138, 148 n. 7 (1983).

ORDER - 4

Plaintiff alleges that in his capacity as an elected School Board member he engaged in protected speech, specifically, public statements critical of the superintendent and the School Board. Plaintiff contends that in retaliation for that speech the School Board and individual members of the Board removed Plaintiff from his position of Vice-President of the Board and thus violated his First Amendment free speech rights.

There is no question that political expression such as Blair's positions and votes on School Board matters is protected speech under the First Amendment. See Connick, at 145; Colson v. Grohman, 174 F.3d 498, 506 (5th Cir. 1999)(city council member's positions and votes on city matters is protected speech under the First Amendment). However, in order for governmental action to trigger First Amendment scrutiny, it must carry consequences that infringe upon protected speech. Phelan v. Laramie County Community College Bd., 235 F.3d 1243, 1247 (10th Cir. 2000); Suarez Corp. Indus. v. McGraw, 202 F.3d 676. 685 (4th Cir. 2000). The First Amendment is not intended to shield politicians from the political process. See, Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 34 (1st Cir. 1996) (finding that a politician who lost his reelection bid for governor of Puerto Rico had no claim for violations of the First Amendment because there is no First Amendment protection for 'a politician whose rights to freedom of speech have been injured by other politicians seeking to undermine his credibility within his own party and with the electorate.); Camacho v. Brandon, 317 F.3d 153, 161-62 (2nd Cir. 2003) (holding a policy-maker plaintiff has no claim for a violation of the First Amendment because "to hold otherwise would subject to litigation all manners and degrees of politically motivated, retaliatory conduct directed at public officials).

Here, Plaintiff was subject to the internal political process of the School Board. Through internal elective procedures Plaintiff was replaced as Vice-President by a director with views conforming to that of the majority of the Board. The removal of Plaintiff from the position of Vice-President did not inhibit Plaintiff's ability to express his political views concerning the superintendent and the actions of the Board, to cast votes and to serve his constituents in his capacity as a director

ORDER - 5

of the School Board.

In <u>Velez v. Levy</u>, 401 F.3d 75 (2nd Cir. 2005) the Court considered the First Amendment retaliation claim of a New York City community school board member. Velez alleged that, in retaliation for the positions she took as a board member, opposing board members fabricated charges against her and the chancellor of the school district, relying on these fabricated charges and a blatantly shoddy investigation into the same, **removed her from her elected position on the school board**. The Second Circuit held that the First Amendment bars state officials from stripping elected representatives of their office based on the political views of such representatives. <u>Velez</u>, at 98. In so holding, the Second Circuit noted:

> We cannot permit a state official to **oust an elected representative** of the people on the bald ground that she voices unsympathetic political views-that is, that she engages in an activity that is at the core of what is protected by the First Amendment. Such an action by a state official, if allowed, would offend the basic purposes of the Free Speech Clause-the facilitation of full and frank discussion in the shaping of policy and the unobstructed transmission of the people's views to those charged with decision making.

Id. at 97-98 (emphasis added). In so holding the Court differentiated the circumstances in <u>Velez</u> from those in <u>Camacho v. Brandon</u>, 317 F.3d 153 (2nd Cir. 2003). In <u>Camacho</u> the Court held that the termination of a city council **staffer** because of his political affiliations with an opposition member of the city counsel was not actionable as an unconstitutional retaliation of the counsel member's exercise of First Amendment speech. <u>Id.</u>, at 162-63. The Court noted the critical distinction that the elected counsel member in <u>Camacho</u> "remained free to express his political views in the council chamber, to cast votes, and to serve his constituents in his capacity as a member of the council even after his assistant was terminated. <u>Velez</u>, at 97. Thus, the Second Circuit has held that the First Amendment is implicated in these circumstances when the retaliatory action results in the loss of the ability to express one's views and represent one's constituents.

The application of this distinction is demonstrated in a number of decisions. In <u>Nelson v. Board of Educ. of Jamestown City School District</u>, 411 F.Supp.2d 341 (W.D. N.Y. 2006) the Court

ORDER - 6

denied a First Amendment claim brought by a school board member against the school board and superintendent after they barred the member from reviewing individualized education programs (IEPs), a campaign promise she had made in her bid for election to the school board. The Court, referring to both Velez and Camacho, dismissed the claim:

> Nelson simply does not allege how she has been prevented from representing the interests of her constituents. Nelson does not allege that she has been prevented from speaking at Board meetings or expressing the views she espouses. She does not allege that she has been prevented from voting on any measure before the Board. Like the official in Camacho, Nelson remains free to express her views on this or any other matter before the Board, to vote on the approval or disapproval of IEPs or any other matter before the Board, and to otherwise faithfully serve and advocate for her constituents. That the other Board members have chosen to disagree with the position advocated by Nelson and have chosen to implement the Resolution which she opposes does not mean that she has been rendered incapable of representing her constituents. Her allegations amount only to a claim that she has been prevented from carrying out the wishes of those who elected her. Such does not constitute First Amendment retaliation under Velez. Accordingly, Nelson's claim for violation of her First Amendment rights will be dismissed.

Nelson, at 346 (footnote omitted).

Consistent with the Velez analysis, the Eighth Circuit has noted that limitations on an elected official's participation in the proceedings of a public body such as the Board may conceivably affect the official's First Amendment free speech rights. However, there is no First Amendment violation where the limiting action of the Board does not limit the ability to vote for Board members, to speak before the Board during public comment periods, or to otherwise express opinions about the District's operation as any other citizen may under the First Amendment's free speech guarantee. Peeper v. Callaway County Ambulance Dist., 122 F.3d 619, 623 n.4 (8th Cir. 1997).

The Tenth Circuit in Phelan v. Laramie County Community College Bd., 235 F.3d 1243, 1247-1248 (10th Cir. 2000) held that a community college board's censure of a board member for encouraging a public vote against a board sponsored tax assessment did not infringe any of the member's free speech rights because it did not punish the board member for exercising these rights or deter future speech. The censure did not prevent her from performing her official duties or

ORDER - 7

restrict her opportunities to speak, such as her right to vote as a board member, her ability to speak before the board, or her ability to speak to the public.

In factual contrast, the Third Circuit held a city counsel member presented a jury question on a claim of violation of free speech where the counsel member was ejected from a counsel meeting for speaking out against the proposed city budget and deprived of his opportunity to vote on the budget. Monteiro v. City of Elizabeth, 436 F.3d 397 (3rd Cir. 2006).

It is apparent from the factual scenario alleged by Plaintiff Blair that his retaliatory claim under the First Amendment is futile. Plaintiff's removal from the position of Vice-President of the School Board does not resemble the consequences the courts found to be an unconstitutional retaliation in Velez and Monteiro. In Velez and Monteiro, as a result of the retaliatory actions, the elected official was ousted from his elected position or otherwise prohibited from conducting the responsibilities for which he was elected to perform. No such action as taken place in the Bethel School District. Just as in Camacho, Nelson , and Phelan, wherein the elected official, whether a member of a school board or city counsel, is not prevented by the retaliatory action from performing official duties, such as to vote as a board member, to vote for board officers, to deliberate and speak before the board during regular board proceedings, or to otherwise express opinions about the board and school district operations as any other citizen, there has been no violation of First Amendment right of free speech.

Simply stated, School Board Director Blair has not forfeited his First Amendment right to speak out on issues of public concern regarding the Bethel School District. There is no First Amendment protection for the loss of an election within the School Board. There is no protection under the First Amendment for a board member whose rights to freedom of speech have been allegedly injured by not being elevated to vice-president of the board, or removed from such elevation, because of the official's disagreement with the majority of the board members. Plaintiff Blair should have expected to endure criticism and incrimination for his minority positions. Plaintiff

ORDER - 8

cannot claim that the School Board and its individual members' decision to vote him out of the position of Vice-President constitutes a violation of the First Amendment. The position is an elective one within the School Board, voted upon by the Board, and obviously to be determined by a majority of the members who believe the office-holder should best represent the views of the majority and the official position of the Board.

Although Plaintiff alleges injury by the Defendants in the form of emotional distress, personal humiliation and loss of reputation, Plaintiff cannot maintain that the Defendants prohibited him from speaking, or that they deprived him of his position of School Board director. His loss of the Vice-Presidency and the corresponding distress and humiliation are simply the outcome of the political machinations within the School Board. There is no constitutional right to be elected to a particular office. Parks v. City of Horseshoe Bend, 480 F.3d 837, 840 (8th Cir. 2007).

The Court finds that Plaintiff Blair's loss of the Vice-Presidency and other "petty" harassments is not actionable as an unconstitutional retaliation of the Board member's exercise of First Amendment speech. Defendants are entitled to summary judgment of dismissal of the First Amendment claim.

**First Amendment Right to Petition**

The First Amendment also guarantees the right "to petition the Government for a redress of grievances." White v. Lee, 227 F.3d 1214, 1227 (9th Cir. 2000). Plaintiff alleges a violation of his First Amendment right to petition government for redress of grievances based on his claim that Defendants retaliated and removed him from the position of Vice-President due to his opposition to School Board actions and in response to disclosure requests with the Bethel School District.

The right to petition for grievances is not absolutely protected; such a right has no greater protection than speech in general. Rendish v. City of Tacoma, 123 F.3d 1216 (9th Cir. 1997). Because the right to petition and the right to free speech are related they are generally subject to the same constitutional analysis. Rendish, at 1220-1223; CarePartners, LLC v. Lashway, __ F.3d __,

ORDER - 9

2008 WL 4352597 (9th Cir. 2008). Section 1983 actions based upon alleged retaliation for exercising the First Amendment right to free speech or in response to the exercise of the right to petition government are evaluated under the same standards applicable to free speech claims. Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1313-14 (9th Cir. 1989). Because the Court has already held that Blair's free speech claim fails, so does his right to petition claim.

As previously addressed, Plaintiff's loss of the Vice-Presidency and the petty harassments endured are nothing more than the normal course of events occurring within the body politic of the School Board in the struggle over School District goals and their implementation. The right to petition, and right of free speech, does not protect the outcome of political disputes.

Defendants are entitled to summary judgment of the right to petition claim.

**Qualified Immunity of Individual Defendants**

In analyzing whether a public official is entitled to qualified immunity, a two-part test is applied to determine: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right, and if so, (2) whether the right was clearly established at the time the official acted. CarePartners, LLC v. Lashway, __ F.3d __, 2008 WL 4352597 (9th Cir. 2008); Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007). As previously addressed, the alleged activities of the individual Defendants in removing Plaintiff form the position of Vice-President do not fall within the First Amendment's protection of the rights of free speech and to petition for regress of grievances. Accordingly, the first part of the test has not been met and the individual Defendants are entitled to qualified immunity.

**Conclusion**

After reviewing the evidence in the light most favorable to Plaintiff, the Court concludes that there are no genuine issues of material fact that support the claims of violation of First Amendment fight of free speech and right to petition.

ACCORDINGLY;

ORDER - 10

IT IS ORDERED:

Defendants' Motion for Summary Judgment Dismissal of Plaintiff's Claims [Dkt. #10] is **GRANTED.**

DATED this 24th day of October, 2008.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 11